155 So. 558

**MARLE v. BURCHFIELD BROS.**

6 Div. 486.

Supreme Court of Alabama.
June 7, 1934.

Rehearing Denied June 28, 1934.

R. F. Peters, of Fayette, for appellant.

T. B. Ward and J. M. Ward, both of Tuscaloosa, for appellees.

BROWN, Justice.

This appeal is from the final decree of the court denying appellant relief on her bill filed against appellees to establish and quiet her title to the second story apartment of the residence on "Lots Numbers One (1) and Two (2), according to the survey of P. D. Brown for a 'Part of the Read Tract,' a map of which is recorded in Plat Book 1, at page 149, in the office of the Probate Judge of Tuscaloosa County, Alabama."

The legal title to the lots in question, along with other property, was acquired by appellees by purchase at a foreclosure sale of certain mortgages executed by the Alabama Slat & Lumber Company, A. Laycock, and W. T. Ozment to the City National Bank of Tuscaloosa, as evidenced by deed duly executed on June 26, 1916, and filed and entered of record in the probate office of Tuscaloosa county on the 21st day of July, 1916.

Thereafter, in about the year 1918, appellees agreed to construct a one-story residence on said lots 1 and 2 and sell the property to R. B. Duncan. This agreement was not in writing. Appellees' evidence goes to show Duncan was to pay $4,500 for the property, including the building, to pay the taxes thereon and keep the building insured. The evidence offered by the complainant, on the other hand, goes to show that the price to be paid by Duncan to appellees was the difference between what they obtained for the other property and what appellees paid for all the property and the construction of the residence on the two lots.

The evidence is without dispute that a one-story residence was constructed by appellees on the lots; that Duncan went into possession, and with his family has resided there continuously for more than ten years, and up to a short time before the trial of this case that Duncan assessed the property for taxes and cultivated a garden thereon, and planted some fruit trees. The evidence is also without dispute that no part of the purchase price was paid by Duncan, and that he is without title or color of title, unless his possession can be said to be adverse and has ripened into title as against appellees.

In the early part of 1930, the appellant, Mrs. Marle, who is the mother of Mrs. Duncan, as the weight of the evidence shows, entered into an agreement with Duncan and his wife to construct a second story on the residence on said lots, and pay the cost thereof, to be used by appellant as a residence for herself and her unmarried daughter, with the understanding with Duncan that, if the property was sold, the money which complainant used in constructing the second story was to be refunded to her. The complainant testified that she purchased the second story, with the right of egress and ingress thereto, from Duncan. The building of the second story was completed in March, 1930, and appellant went into possession thereof and has remained in possession up to the time of the trial.

On September 8, 1932, appellees filed a bill against Duncan to enforce and foreclose their lien for the purchase money, and said proceeding eventuated in a decree in their favor on November 25, 1932, ascertaining the amount of the indebtedness due to be $9,745, and ordering the property sold unless said indebtedness was paid within thirty days from the date of the decree.

The appellant's contention is that Duncan acquired title to the property by adverse possession, and that she is an innocent purchaser without notice, and that her equity is superior to that of the appellees.

In Bankhead et al. v. Owen, 60 Ala. 457, 466, 467, this court, speaking through Brickell, C. J., observed:

"The equitable lien of the vendor has not, in the course of our decisions, been carefully distinguished at all times from the security the vendor carves out for himself, by retaining in himself the legal estate until the payment of the purchase-money. The two are often spoken of, as if they were of the same

74

character and operation; and yet they have no common element, except that each is a security for a debt—the one, by the contract of the parties; the other, by operation of law, and under a decree of a court of equity. There can be no just and proper distinction drawn between a mortgage to secure the payment of the purchase-money, executed contemporaneously with the conveyance of the land, and a reservation of the legal estate, as a security for its payment.—Graham v. McCampbell, Meigs [Tenn.] 52, 33 Am. Dec. 126. The cases of Roper v. McCook, 7 Ala. 318, Conner v. Banks, 18 Ala. 42, 52 Am. Dec. 209, Kelly v. Payne, 18 Ala. 371, Haley v. Bennett, 5 Port. 452, Chapman v. Chunn, 5 Ala. 397, Owen v. Moore, 14 Ala. 640, Burns v. Taylor, 23 Ala. 255, Bradford v. Harper, 25 Ala. 337, Driver v. Hudspeth, 16 Ala. 348, Relfe v. Relfe, 34 Ala. 500, 73 Am. Dec. 467, and Magruder v. Campbell, 40 Ala. 611, all concur that, when the vendor retains the legal title as a security for the purchase-money, all the essential incidents of a mortgage attach. The vendor, retaining the legal estate, has *the right to and in the land*, on which he may maintain ejectment for the recovery of possession, compelling the vendee to resort to equity for a redemption, or, rather, for a specific performance. He may sue at law on the note, or bond, or bill given for the purchase-money, or seek a foreclosure in equity; and these remedies may be pursued concurrently. The only remedy of the vendee is in equity for a specific performance; and the court can not intervene for his relief, unless he aver, and if the averment is not admitted prove, payment of the purchase-money,—the part of the contract he was bound to perform. The vendee, who has obtained a conveyance, of course is under no necessity of seeking any relief against the vendor. No right to, or interest in the land, remains in the vendor, and, consequently, he can not maintain ejectment for its recovery. All the remedy he may pursue, other than an ordinary action at law, for the recovery of the purchase-money, is in equity for the enforcement of the lien or trust the court raises and enforces for his protection and indemnity. The difference, in right and remedy, between the equitable lien and the security the vendor creates for himself by retaining the legal estate, is so apparent, that it is matter of surprise they should be so often spoken of as if they were identical. Another difference may be remarked: that the title of a *bona fide* purchaser without notice will prevail over the equitable lien, *while there can not be a bona fide purchaser entitled to protection when the vendor retains the legal estate.*" (Italics supplied.)

 To maintain her contention that she was an innocent purchaser without notice, it was incumbent on complainant to show that she had a conveyance to her of the legal title, and this, of course, necessitated that her vendor have a legal title to convey, and she was charged with notice of every defect which an examination of her vendor's chain of title would disclose. State of Alabama v. Conner, 69 Ala. 212; Craft v. Russell, 67 Ala. 9; Corbitt, Administrator, v. Clenny et al., 52 Ala. 480; Thames & Co. v. Rembert's Adm'r, 63 Ala. 561.

The only interest Duncan acquired under the executory agreement of purchase, in the absence of payment of the purchase money, was that of a tenant at sufferance, and his possession under that agreement could not become adverse, in the absence of a positive disavowal of such tenancy brought to the notice of the vendors. State of Alabama v. Conner, 69 Ala. 212, 216.

Appellant's interest could not rise higher than that of her vendor.

We discover no error on the record.

Affirmed.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.